UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHAD PEREZ, ET AL.                          CIVIL ACTION

VERSUS                                      NO: 12-2280

CITY OF NEW ORLEANS, ET AL.                 SECTION: "J"(1)

## ORDER AND REASONS

Before the Court are a *Motion to Dismiss or, in the Alternative,
Motion for Summary Judgment* (**Rec. Doc. 116**) and two Motions in
Limine **(Rec. Doc. 130; Rec. Doc. 145)** filed by Defendants, Michael
Harrison, in his official capacity as the Superintendent of the
New Orleans Police Department, Ronal Serpas, and the City of New
Orleans (collectively "Defendants"), and three *Oppositions* thereto
(**Rec. Doc. 143, Rec. Doc. 144; Rec. Doc. 151**) filed by Plaintiff,
Chad Perez, ("Plaintiff") on behalf of a class of similarly
situated police officers. Having considered the motion, the
parties' submissions, the record, and the applicable law, the Court
finds, for the reasons expressed below, that the motions should be
**GRANTED in part and DENIED in part**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Officer Chad Perez, a former New Orleans Police Officer, brought
this action under the Fair Labor Standards Act ("FLSA"), on his

1

own behalf and on behalf of all similarly situated members of the NOPD, against the City of New Orleans ("the City") and against Ronal Serpas in his capacity as Superintendent of the New Orleans Police Department ("NOPD").[1] Perez alleges that from September 16, 2009 through the present date, the NOPD has failed to pay him and other NOPD officers the overtime compensation that was due to them. Plaintiff challenges the NOPD's time-keeping system (the "J&T system") on two grounds. First, Plaintiff asserts that the scheduled 42.5 hour work week for NOPD officers is in excess of the forty hours per week threshold for overtime payment established by the FLSA. (Rec. Doc. 1, at 3, 10.) Second, Plaintiff claims that the NOPD failed to accurately record officers' unscheduled time worked in order to minimize the payment of overtime rates. *Id.* at 5-6, 10. Plaintiff also alleged (1) violations of United States Code, Title 42, Section 1983; (2) retaliation; and (3) state-law tort claims sounding in defamation and intentional infliction of emotional distress ("IIED").

Upon Plaintiff's motion, on April 7, 2014, this Court conditionally certified the class of plaintiffs, defined as "New Orleans Police Department officers denied earned overtime

---

[1] On February 11, 2015, Michael Harrison, current NOPD Superintendent, was added as a defendant. Plaintiff also named NOPD Commander Robert Norton as a defendant.

compensation and/or J&T time, beginning September 16, 2009." (Rec. Doc. 34, at 6.) Over the next two years, the parties engaged in extensive, contentious discovery. A jury trial in this matter is set for April 11, 2016. On March 1, 2016, Defendants filed the instant Motion to Dismiss. (Rec. Doc. 116.) On March 7, Defendants filed their first Motion in Limine. (Rec. Doc. 130.) Plaintiff opposed the motions on March 15, 2016. Defendants received the Court's permission to file a reply brief on March 22, 2016. (Rec. Doc. 153.) Defendants filed a second Motion in Limine, Motion to Strike, and Motion for Sanctions (Rec. Doc. 145) on March 18. Plaintiff opposed this motion on March 22. (Rec. Doc. 151.)

## PARTIES' ARGUMENTS

### A. Motions in Limine

In their first Motion in Limine, Defendants argue that Plaintiff should be prohibited from introducing certain evidence. First, Defendants take issue with documents produced by Plaintiff at the deposition of Independent Police Monitor ("IPM") Susan Hutson. Defendants argue that Plaintiff had not previously disclosed these documents. Second, Defendants claim that the IPM's report on NOPD retaliation policy is not relevant and is not listed on Plaintiff's exhibit list. Third, Defendants generally argue that Plaintiff should not be allowed to introduce any other documents that were

not timely produced in accordance with the Court's scheduling order and the Federal Rules of Civil Procedure. Finally, Defendants assert that Ms. Hutson should not be permitted to testify as an expert witness at trial. Defendants argue that Plaintiff did not disclose Ms. Hutson as an expert in accordance with Federal Rule of Civil Procedure 26(a)(2)(A).

In his opposition, Plaintiff argues that Defendants' motion fails. First, Plaintiff asserts that he should be allowed to exchange documents with Defendants before trial. Plaintiff contends that Defendants may then object to certain documents, and the Court can rule on the objections at trial. Second, Plaintiff argues that some documents are addressed to NOPD employees, including the IPM report on the retaliation policy. Thus, Plaintiff argues that Defendants already have the documents. With respect to the documents not timely produced, Plaintiff argues that Defendants failed to specifically identify such documents. Plaintiff claims that a broad order excluding the documents would be inappropriate. Further, with respect to Ms. Hutson's expert testimony, Plaintiff points out that a lay witness can give opinion testimony. Plaintiff also argues that Ms. Hutson may be an expert witness who is not required to provide a report under Rule 26(a)(2)(B). Finally, Plaintiff reiterates that the Court should

decide these issues at trial, rather than an order ruling on Defendants' pre-trial motion.

Defendants' second Motion in Limine is similar to their first. Defendants aver that Plaintiff provided them with a second exhibit list, which contained items that were not included in the exhibit list filed with the Court. Moreover, Defendants claim that Plaintiff's list does not adequately describe each exhibit. Accordingly, Defendants ask the Court to strike the second exhibit list, prohibit Plaintiff from introducing any evidence that was not previously disclosed, and grant Defendants attorneys' fees and sanctions. In his opposition, Plaintiff argues that his description of each exhibit was satisfactory. Further, Plaintiff claims that the documents on the list were produced during discovery and specified on the initial exhibit list.

## B. Motion to Dismiss/Motion for Summary Judgment

Defendants raise a number of bases to dismiss Plaintiff's claims or to grant Defendants summary judgment. First, Defendants claim that Plaintiff's claims against Robert Norton should be dismissed for insufficient service of process. Defendants contend that Mr. Norton was never served, which is required by the Federal Rules of Civil Procedure. Second, Defendants argue that Perez's retaliation claim should be dismissed for lack of subject matter jurisdiction.

Defendants claim that the Civil Service Commission is the proper venue for this claim. Further, Defendants argue that they are entitled to summary judgment on this claim because Perez's suspension was based on a legitimate, non-retaliatory reason.

Third, Defendants argue that Perez's Section 1983 claim should be dismissed for failure to state a claim. With respect to Defendant Ronal Serpas, Defendants argue that Perez (1) failed to plead the deprivation of a federal right and (2) failed to demonstrate that Serpas acted with deliberate indifference to the violation of Perez's rights. Further, Defendants assert that Serpas is entitled to qualified immunity. With respect to the City, Defendants argue that Perez's claim should be dismissed because he failed to demonstrate the existence of a municipal policy that caused a deprivation of his rights.

Fourth, Defendants argue that Perez's claim for overtime pay under the FSLA should be dismissed because he failed to plead enough facts to establish a claim under the statute. Perez alleged that NOPD had a policy of not paying for overtime compensation. However, Defendants argue that Perez did not introduce sufficient evidence to show how and when these alleged violations occurred. Alternatively, Defendants claim that they are entitled to summary judgment on the FLSA claim. According to Defendants, Perez was

sufficiently compensated for all unscheduled hours that he worked. Fifth, Defendants assert that Perez failed to state a claim for libel because he failed to identify any defamatory statements made by Defendants. Sixth, Defendants argue that Perez's IIED claim should be dismissed because he did not plead "extreme or outrageous conduct."

Plaintiff's opposition does not directly respond to Defendants' contentions. Rather, Plaintiff raises several new arguments. First, Plaintiff contends that Defendants already filed a Motion to Dismiss. (Rec. Doc. 8.) In response, Plaintiff's complaint was amended. (Rec. Doc. 13.) Thus, Plaintiff argues that a second motion to dismiss is inappropriate because he already remedied any deficiencies in the original complaint. Second, Plaintiff alleges that the City has admitted that it owes compensation to class members for unpaid overtime worked. Plaintiff also claims that class members did not record their overtime hours in the system for fear of retaliation. Further, Plaintiff suggests that Serpas knew that the NOPD's time-keeping system was criminally flawed. Thus, Plaintiff claims that Serpas is subject to liability under Section 1983.

Next, Plaintiff addresses the disciplinary complaint (2011-919) filed against Perez. Plaintiff received a one-day suspension for

leaving work early without permission. However, Plaintiff suggests that the suspension was given in retaliation for his formal complaint about unpaid overtime. Plaintiff also argues that a complaint against him was listed as "pending investigation," preventing him from obtaining other law enforcement work after his resignation. Further, Plaintiff argues that he was denied promotion due to the pending complaint and the one-day suspension. Plaintiff also claims that Serpas implemented the NOPD time-keeping system, "despite numerous warnings of potential criminal and civil liability for doing so." (Rec. Doc. 143, at 13.) Thus, Plaintiff asserts that Serpas willfully and deliberately deprived Plaintiff of his economic and civil rights.

Defendants filed a reply memorandum addressing Plaintiff's opposition. First, Defendants argue that Plaintiff's FLSA claim should be dismissed. Defendants point out that federal law provides that law enforcement employees must work over 86 hours in a two-week period before they are entitled to overtime pay. According to Defendants, it is uncontested that Plaintiff and the class members were only required to work 85.5 hours in a two-week period. Defendants also assert that Plaintiff erroneously equates unscheduled hours with overtime. Further, Defendants argue that

Plaintiff failed to introduce evidence showing that he is owed payments for unscheduled hours worked.

Second, Defendants address Plaintiff's retaliation claim. Defendants argue that Plaintiff failed to establish that the one-day suspension was mere pretext. In addition, Defendants claim that the Court should discount Ms. Hutson's deposition testimony because Defendants have yet to take her deposition. Defendants also argue that the Civil Service Commission's ruling is not relevant because it was based on Louisiana law, not federal law. Third, Defendants claim that Plaintiff failed to establish a Section 1983 claim. Defendants attack Plaintiff's evidence and emphasize that Plaintiff failed to address their argument that Serpas is entitled to qualified immunity. Finally, Defendants point out that Plaintiff did not oppose Defendant's motion with respect to his state law defamation and IIED claims.

## LEGAL STANDARD

### A. Motions in Limine

The Federal Rules of Civil Procedure grant district courts the power to "control and expedite the discovery process through a scheduling order." *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *see* FED. R. CIV. P. 16. Rule 16 also allows a court to exclude expert testimony or strike pleadings if a party

fails to comply with deadlines imposed by a scheduling order. FED. R. CIV. P. 16(f)(1); *see* FED. R. CIV. P. 37(b)(2)(A). District courts have broad discretion to award sanctions for violations of pre-trial or scheduling orders. *Barrett*, 95 F.3d at 380. The Fifth Circuit reviews such sanctions for abuse of discretion. *Id.* To determine whether the district court abused its discretion, the Fifth Circuit considers: "(1) The explanation if any for the party's failure to comply with the discovery order; (2) The prejudice to the opposing party of allowing the witness to testify; (3) The possibility of curing such prejudice by granting a continuance; (4) The importance of the witnesses' testimony." *Id.*

## B. Motion to Dismiss/Motion for Summary Judgment

### 1. Motion to Dismiss

Ordinarily, "[u]nder Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim [that] would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). The standard analysis changes when the defendant fails to timely file a motion under Rule 12(b)(6):

> A motion made under Rule 12(b)(6) that raises the defense of failure to state a claim upon which relief may be granted must be made before the service of a responsive pleading, but according to Rule 12(h)(2) the defense is

10

> preserved and may be raised as late as trial. Technically therefore, a post-answer Rule 12(b)(6) motion is untimely and the cases indicate that some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief.

5b CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed.) (internal citations omitted). Rule 12 provides that an argument for failure to state a claim upon which relief can be granted may be raised by a motion under Rule 12(c). FED. R. CIV. P. 12(h)(2)(B).

Rule 12(c) states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). In this case, Defendants largely did not rely on "matters outside pleadings" to support their Motion to Dismiss. The Court will disregard any outside matters cited. Thus, the proper standard to evaluate Defendants' Motion to Dismiss is the Rule 12(c) standard. This standard is identical to the standard for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Defendants also raise arguments under Rule 12(b)(1) and Rule 12(b)(5), for lack of subject matter jurisdiction and insufficient service of process, respectively. The standard of review for a facial challenge to a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). A motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure challenges the mode of delivery or lack of delivery of the summons and complaint. A 12(b)(5) motion turns on the legal sufficiency of the service of process. Once the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). A district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

   *2. Motion for Summary Judgment*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may

not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Motions in Limine

Defendants' arguments in both Motions in Limine follow one central theme: Plaintiff failed to disclose documents or witnesses in accordance with the Court's scheduling order. (Rec. Doc. 81.) The order provides:

> Written reports of experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B), who may be witnesses for plaintiff shall be obtained and delivered to counsel for defendant as soon as possible, but in no event later than **DECEMBER 23, 2015**. . . . Counsel for the parties shall file in the record and serve upon their opponents

15

> a list of all witnesses who may or will be called to
> testify on trial, and all exhibits that may or will be
> used, not later than **JANUARY 22, 2016**. The Court will
> not permit any witness, expert or fact, to testify or
> exhibits to be used unless there has been compliance
> with this Order as it pertains to the witnesses.

*Id.* at 1-2 (emphasis in original). Plaintiff filed his witness and exhibit lists on January 22, in accordance with this order. Defendants contend that Plaintiff seeks to introduce evidence that he did not previously disclose. Further, Defendants argue that Plaintiff is trying to introduce expert testimony without providing an expert report. Thus, the Court must consider whether excluding the evidence is a proper sanction.

First, Plaintiff's oppositions do not explain his failure to comply with the scheduling order. Plaintiff contends that Defendants should have been aware of documents addressed to NOPD employees. However, Plaintiff fails to provide any other explanation for his failure to include these documents in the exhibit list.

Second, Defendants are prejudiced by Plaintiff's failure to produce an expert witness report. The purpose of requiring disclosure of expert reports is to notify opposing parties of the scope and content of the expert's proposed testimony. *Matthews v. Allstate Ins. Co.*, 731 F. Supp. 2d 552, 559 (E.D. La. 2010). In a similar case before this Court, a defendant provided expert witness

16

reports two months after the deadline. *Standard Servs. Co. v. Witex USA, Inc.*, 2003 WL 2004442, at *2 (E.D. La. April 30, 2003). Here, the deadline passed three months ago on December 23, 2015. Plaintiff has not produced an expert report for Ms. Hutson. Trial is scheduled for April 11, 2016, in less than one month. Therefore, Defendants are prejudiced by Plaintiff's failure to comply with the scheduling order.

Further, Defendants are prejudiced by Plaintiff's attempt to introduce documents that he did not previously disclose. The fact that some of the documents were within Defendants' control is irrelevant. In a similar case, a court of this District found that a plaintiff could not designate new witnesses after the deadline, even though the witnesses were subject to the defendant's control. *Cruz v. City of Hammond*, No. 09-6304, 2015 WL 1467952, at *3 (E.D. La. Mar. 30, 2015). The court reasoned:

> Deadlines are in place to provide the parties and the Court with some measure of predictability. It would have been reasonable for the defendant to focus its discovery efforts on only those witnesses it intended to call and for those it had been notified that the plaintiff would call. To now allow the plaintiff to call at trial witnesses who were only identified well-after [sic] the deadline to issue written discovery requests and only days leading up to the actual discovery and deposition deadline would be unfair, prejudicial, and not in the interests of justice.

*Id.* In addition, late disclosure requires the defendant to "verify all of the late-provided information and [marshal] opposition evidence of its own." *Paulsen v. State Farm Ins. Co.*, No. 06-9546, 2008 WL 449783, at *5 (E.D. La. Feb. 15, 2008).

In this case, Plaintiff attempted to introduce new documentary evidence at the deposition of Ms. Hutson, one week before the discovery deadline. Also, on February 23, 2016, the discovery deadline, Plaintiff attempted to fax the IPM report to Defendants. However, Defendants did not receive the report until February 24. Plaintiff did not include the report on his exhibit list. By the time Defendants received the report, trial was fewer than two months away. If the Court were to allow Plaintiff to introduce this evidence, Defendants would suffer prejudice due to the late filing. Also, Defendants were prejudiced by Plaintiff's attempts to introduce previously undisclosed documents at the deposition of Ms. Hutson. Because they were unfamiliar with the documents, Defendants were forced to postpone their deposition of Ms. Hutson to March 22, 2016, just three weeks before trial.

Third, the prejudice cannot be cured by a continuance of the trial date. Plaintiff filed suit on September 16, 2012. The Court has continued the trial date several times. The parties are preparing for trial on April 11, 2016, and a continuance would

create an unnecessary, additional delay. Granting a continuance now would only serve to reward Plaintiff for missing the discovery deadline. "[A] continuance does not, in and of itself, 'deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'" *Barrett,* 95 F.3d at 381 (quoting *Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir. 1990)).

Plaintiff does not argue that the evidence to be excluded is central to his case. However, to the extent that the evidence is important, the importance of the evidence cannot "singularly override the enforcement of local rules and scheduling orders." *Barrett,* 95 F.3d at 381 (quoting *Geiserman,* 893 F.2d at 792)). Also, if the evidence were important, Plaintiff should have sought an extension of the deadline. The potential importance of the excluded evidence is outweighed by Plaintiff's failure to comply with the scheduling order.

Therefore, Plaintiff is precluded from introducing any documents not specified on the first exhibit list, including the IPM report, in accordance with this Court's scheduling order. Further, Plaintiff is prohibited from introducing any expert witnesses for whom expert reports were not provided. However, Ms. Hutson may testify as a fact witness because she is listed on Plaintiff's witness list. To the extent that it included evidence not

19

previously disclosed, the second exhibit list provided to Defendants is hereby stricken. Finally, the Court declines to sanction Plaintiff or award attorneys' fees and costs to Defendants.

**B. Motion to Dismiss/Motion for Summary Judgment**

Defendants raise five distinct arguments in their motion. The Court will discuss each in turn.

*1. Claims Against Robert Norton*

Defendants argue that Robert Norton, a state actor, did not receive service of process in his individual capacity. "[T]he fact that an individual state actor may be sued in his or her *official* capacity does not obviate the necessity for appropriate service of process for suit in a person's *individual* capacity." *Judeh v. Louisiana State Univ. Sys.*, No. 12-1758, 2013 WL 654921, at *3 (E.D. La. Feb. 20, 2013); *see also Robinson v. Turner*, 15 F.3d 82, 85 (7th Cir. 1994) ("Service upon an employee in his official capacity does not amount to service in his individual capacity."). "To serve a [government] officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the [government's] behalf (whether or not the officer or employee is also sued in an official capacity), a party must

serve the [government] and also serve the officer or employee under Rule 4(e), (f), or (g)." *See* Fed. R. Civ. P. 4(i)(3).

The procedural requirements for proper service are set forth in Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(e), an individual may be served by following the procedural methods of service of process provided by the state in which the district court is located, *see* Fed. R. Civ. P. 4(e)(1), or by doing any of the following: (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Rule 4(m) gives a plaintiff 120 days to serve the defendants.[2] Under Rule 4(m), when a plaintiff fails to serve a defendant within the 120-day period, the court may "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If, however, the

---

[2] Rule 4(m) was amended in 2015, and the time for effecting service on a defendant was reduced from 120 days to 90 days. The 2015 amendment took effect on December 1, 2015, after Plaintiff filed suit. Therefore, the Court applies the 120-day period in effect at the time the instant case was filed.

plaintiff shows good cause for the failure, the court must extend the time of service for an appropriate period. *Id.*

In this case, Plaintiff's complaint fails to name Norton in his official capacity. Thus, Plaintiff should have effected service on Norton, a defendant named in his individual capacity. Plaintiff neither offered evidence to show service on Norton, nor showed good cause for the failure to serve Norton. Because Plaintiff failed to serve Norton in the requisite time period, the Court finds that all claims against Norton should be dismissed without prejudice.

*2. Section 1983 Claims*

Section 1983 provides a cause of action against any person who, under color of law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 is a procedural vehicle to provide a remedy for violations of constitutional or statutory rights, but it does not create any substantive rights. *Johnston v. Harris Cnty. Flood Control Dist.,* 869 F.2d 1565, 1574 (5th Cir. 1989). Accordingly, where "Congress has enacted a statute that covers a specific substantive area providing specific remedies, a cause of action under [Section] 1983 is foreclosed." *Lafleur v. Tex. Dept. of Health,* 126 F.3d 758, 759 (5th Cir. 1997) (finding that the Age

Discrimination in Employment Act ("ADEA") preempted a Section 1983 claim).

Here, Plaintiff's Section 1983 claim restates his FLSA claims. With respect to Section 1983, the complaint states:

> In his position as the City's policymaker, Chief Serpas instituted a supervised a program by which employees of NOPD would work substantial overtime hours and yet receive no compensation, either monetary or in-kind. He was assisted in making and implementing this policy by those like Commander Norton, who developed policy for those individuals subject to his authority. Serpas and Norton used this authority to perform various acts of retaliation as set forth herein in maintaining the viability of their policies.

(Rec. Doc. 1, at 12.) These claims arise under the FLSA, as the Court will discuss in Section 3, below. However, "courts have consistently held that the FLSA provides an exclusive remedy for overtime violations." *Henley v. Simpson*, No. 10-590, 2012 WL 3017812, at *2 (S.D. Miss. July 23, 2012) *vacated in part on other grounds,* 527 F. App'x 303 (5th Cir. 2013) (collecting cases: *Barfield v. Madison Cnty., Miss.,* 984 F. Supp. 491, 509 (S.D. Miss. 1997) (dismissing Section 1983 claims because the FLSA provides the exclusive remedy), *abrogated on other grounds by Washington v. Fred's Stores of Tenn., Inc.*, 427 F. Supp. 2d 725 (S.D. Miss. 2006) (finding state law negligence and conversion claims not preempted); *see also Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 443 (4th Cir. 1999) (concluding "that the mechanisms

established by the FLSA preclude a [Section] 1983 action to enforce FLSA rights"); *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1448 (5th Cir. 1992) (noting that the ADEA is the exclusive remedy for age discrimination and forecloses actions under Section 1983) (citing *Zombro v. Baltimore City Police Dep't.*, 868 F.2d 1364, 1369 (4th Cir. 1989) (observing that the ADEA is part of Section 1983)); *Montano-Perez v. Durrett Cheese Sales, Inc.*, 666 F. Supp. 2d 894, 905 (M.D. Tenn. 2009) (noting "numerous courts have concluded that a plaintiff may not seek relief under [Section] 1983 for violations of the FLSA"); *O'Quinn v. Chambers Cnty., Tex.*, 636 F. Supp. 1388, 1392 (S.D. Tex. 1986) ("Moreover, the FLSA probably provides an exclusive remedy for violations of rights conferred by the FLSA.")). Therefore, Plaintiffs' Section 1983 claims should be dismissed for failure to state a claim.[3]

### 3. FLSA Claims

Plaintiff raises two claims under the FLSA. First, he challenges the NOPD's J&T system. Second, he argues that the NOPD illegally retaliated against him for engaging in protected activity. The Court will discuss each claim in turn.

---

[3] Because Plaintiff's claim will be dismissed for failure to state a claim, the Court need not address Defendants' remaining arguments.

a. <u>Overtime Claims</u>

Section 207 of the FLSA provides the mandatory parameters for overtime pay. 29 U.S.C. § 207. Section 216(b) of the FLSA affords workers a right of action for violations of these parameters. *Id.* § 216(b). Section 207(a) requires employers covered by the Fair Labor Standards Act to pay their employees one and a half times the regular rate at which they are employed for any hours worked in excess of forty in a single week. *Id.* § 207(a).

However, Section 207(k) provides a partial exception to this general rule for employees of a public agency engaged in fire protection or law enforcement activities. Public agency employers falling within this exception may instead determine the threshold for overtime pay on the basis of a pay period of more than seven and less than twenty-eight days. 29 U.S.C. § 207(k)(1). The interpretive regulations of the FLSA establish that overtime pay is owed to law enforcement officers "when the ratio of the number of hours worked to the number of days in the work period exceeds the ratio of . . . 171 . . . hours to [twenty-eight] days."[4] 29 C.F.R. § 553.201(a). However, before a public employer may qualify for the Section 207(k) exemption, "(1) the employees at issue must

---

[4] The resulting ratio of 6.11 hours per day, rounded, translates into 86 hours for a work period of 14 days.  29 C.F.R. § 553.230

be engaged in fire protection or law enforcement within the meaning of the statute and (2) the employer must have established a qualifying work period." *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 185 (3d Cir. 2014) (quoting *Calvao v. Town of Framingham,* 599 F.3d 10, 14 (1st Cir. 2010)) (quotation marks omitted).

On the evidence before the Court, the NOPD's employees clearly qualify for the Section 207(k) exemption. First, it is uncontroverted that Plaintiffs are engaged in law enforcement activities within the meaning of the FLSA. Second, the NOPD has established a fourteen day work period, within which an employee must be paid overtime for hours worked in excess of 85.5 in a single work period. (Rec. Doc. 116-5.) This pay period complies with Section 553.201(a). To accommodate the unpredictable needs of its workforce on any given day and adhere to the 85.5 hour pay period, the NOPD instituted a system referred to as "J&T Time." Under this system, any unscheduled hours worked by an officer are entered into the city payroll system under the code "J" and the corresponding reduction of scheduled hours within that same pay period – to offset the extra time worked – is entered under the code "T." On its face, the J&T Time scheme simply allows for flexible scheduling within the structure of the two-week work period; it does not violate the FLSA. Thus, Defendants are entitled

26

to summary judgment on Plaintiffs' claim that the J&T Time policy violates the FLSA.

In their motion for summary judgment, Defendants argue that Plaintiff failed to present sufficient evidence to support the claim that the NOPD inadequately and inaccurately documented overtime hours in a consistent manner. (Rec. Doc. 116-1, at 4.) To the contrary, Defendants assert that the City's records establish that Perez is not owed overtime pay by the NOPD. *Id.* Plaintiff responds that the NOPD's records are "incomplete and faulty" because many worked overtime hours were never recorded in the first place. (Rec. Doc. 143, at 7.) In support of this assertion, Plaintiff attaches (1) a sworn affidavit of Perez that recounts numerous instances in which he completed necessary work during off-duty hours for which he was not compensated (Rec. Doc. 143-7, at 3, 7-11) and (2) interrogatory responses generally on behalf of the class and from three named class members. (Rec. Doc. 143-8.)[5]

A plaintiff generally has the burden of proving that his employer violated the FLSA and can do so by relying upon his employer's proper and accurate records. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded on other*

---

[5] Numerous other responses to interrogatories from individual class members appear elsewhere in the record but were not appended to Plaintiff's opposition. (*See* Rec. Doc. 118-5.)

*grounds by statute*, The Portal-to-Portal Act, 29 U.S.C. §§ 251 *et seq.*, *as recognized in IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). However,

> where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* Prima facie proof of a pattern or practice of FLSA violations may be established through representational evidence. *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973).

The accuracy of NOPD records is a material fact that remains in dispute. Moreover, Plaintiff submitted admissible evidence demonstrating reasonably quantifiable uncompensated hours worked. Defendants have offered no evidence to negate the reasonableness of inferences drawn from Plaintiff's evidence. Summary judgment is inappropriate on this record as to Plaintiff's claim that the NOPD failed to accurately record officers' unscheduled time worked.

b. Retaliation Claims

Defendants assert that Perez's retaliation claim should be dismissed and provide several arguments in support: (1) that article 10, § 12(B) of the Louisiana State Constitution vests the New Orleans Civil Service Commission – not this Court – with exclusive subject matter jurisdiction over appeals by classified employees regarding disciplinary actions and other personnel transactions taken by their respective departments and (2) that, given the current appeal before the Louisiana Fourth Circuit Court of Appeal of the Civil Service Commission's decision regarding Perez's discipline, the risk of inconsistent findings of fact and rulings counsel against this Court maintaining jurisdiction over the claim. Further, Defendants assert that if this Court finds it has proper jurisdiction over the claim, Defendants are entitled to summary judgment because they did not retaliate against Perez as there was a legitimate, non-retaliatory reason for his one-day suspension.

First, with respect to Defendants' jurisdictional arguments, the Louisiana State Constitution provides,

> Each city commission . . . shall have the exclusive power
> and authority to hear and decide all removal and
> disciplinary cases . . . . The decision of a commission
> shall be subject to review on any question of law or
> fact upon appeal to the court of appeal wherein the
> commission is located, upon application filed with the

29

commission within thirty calendar days after its decision becomes final."

LA. CONST. art. 10 § 12(b). This language clearly establishes the exclusive original jurisdiction of the New Orleans Civil Service Commission over termination and disciplinary cases, such as the successful disciplinary appeal taken by Perez, now on appeal by the City in the Louisiana courts. However, Plaintiff does not now seek reinstatement or restoration of seniority in this case. Rather, Plaintiff seeks damages for lost wages and emotional and physical distress. (*See* Rec. Doc. 1, at 14.)

Courts that have addressed similar jurisdictional arguments in the context of state law claims have largely determined that because the Civil Service Commission has no authority to provide for general tort damages, the courts have jurisdiction over state law claims "for loss of enjoyment, loss of reputation, lost wages and benefits, and mental anguish and emotional distress." *Pike v. Office of Alcohol & Tobacco Control of the La. Dep't of Revenue*, No. 14-511, 2015 WL 9703355, at *15 (M.D. La. Sept. 22, 2015). The Louisiana Supreme Court has yet to address this issue, but several federal district court and Louisiana Court of Appeals decisions support this analysis. *Id.* at *8-15. *A fortiori*, if this Court would have jurisdiction over state law tort claims related to adverse employment actions suffered by Perez, this Court has

30

jurisdiction over his FLSA retaliation claims. Because the Civil Service Commission cannot provide Plaintiff with the relief he seeks, this Court properly maintains jurisdiction over his retaliation claim.

Second, with respect to Defendants' arguments on the merits, the FLSA provides in pertinent part:

> (a) . . . [I]t shall be unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee . . . .

29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation under the FLSA, a plaintiff must show: (1) that he engaged in a protected activity, (2) an employment action that disadvantaged him, and (3) a causal connection between the protected activity and the adverse employment action. *Smith v. Parish of Washington,* 318 F. Supp. 2d 366 (E.D. La. 2004). The burden-shifting framework developed for Title VII discrimination cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), has been adapted and applied to claims under the FLSA. *Kanida v. Gulf Coast Medical Personnel LP,* 363 F.3d 568, 575 n.5 (5th Cir. 2004). Thus, after the plaintiff establishes a *prima facie* case,

31

"the defendant must then articulate a legitimate, non-discriminatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

Plaintiff met his burden of proving the *prima facie* case. Defendants proffered a non-discriminatory reason for their actions, but Plaintiff demonstrated that whether this reason is pretext is at least a material fact in dispute. First, Plaintiff's complaint sets out a *prima facie* discrimination claim. The complaint alleges, "Officer Perez engaged in protected conduct by reporting his supervisors to the appropriate authorities and informing those authorities of the violations of FLSA perpetrated by the NOPD." (Rec. Doc. 1, at 13.) As discussed above, filing a complaint or instituting a proceeding under the FLSA is protected conduct. 29 U.S.C. § 215(a)(3). Further, the complaint alleges that Defendants took adverse employment action against Perez by:

> 1) Disciplining him on multiple occasions for actions and/or omissions he did not commit;
> 2) Denying Perez promotion based on baseless complaints their own evidence showed was meritless;
> 3) Demeaning and maligning Officer Perez to various members of the NOPD and the public; [and]
> 4) Subjecting Officer Perez to demeaning comments and other unwarranted criticism during the performance of his duties . . . .

(Rec. Doc. 1, at 13.) Finally, the complaint states that Plaintiff experienced the adverse employment actions after filing his complaint. *Id.* at 6-9.

Second, Defendants offered a non-discriminatory reason for the adverse employment action. Defendants argue that Plaintiff received a one-day suspension because he left work early without obtaining permission from his supervisor. Thus, the burden shifts to Plaintiff to introduce evidence showing that Defendants' proffered reason is mere pretext. Here, the Civil Service Commission's decision is instructive. (*See* Rec. Doc. 143-2.) Plaintiff appealed his one-day suspension to the Commission, which granted his appeal. The Commission found that Perez "proved by a preponderance of the evidence that the disciplinary action against him was motivated by retaliation." *Id.* at 6. The evidence showed that Perez's infraction was not part of a pattern predating his FLSA complaint, that Perez's supervisor was able to reach him by telephone if he was needed, that the supervisor did not ask him to return after he left early, and that the offense was not one "usually deemed worthy of disciplinary action in the absence of a retaliatory motive." *Id.* at 6-7.

33

Defendants correctly assert that the Commission's decision was based on state law, not federal law. However, Plaintiff introduced sufficient evidence to create a fact issue as to Defendants' motives in disciplining him. Summary judgment is inappropriate on Plaintiff's retaliation claim.

*4. Defamation Claims*

Under Louisiana law, a successful cause of action for defamation requires the existence of the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Costello v. Hardy,* 864 So. 2d 129, 139 (La. 2004). The plaintiff must prove each element to prevail. *Id.* at 140. In this case, Plaintiff's complaint alleges that the City and Norton are liable for defamation. The complaint states:

> Acting in his capacity as the policymaker for the City, Commander Norton made demeaning and degrading comments—both personal and professional—concerning Officer Perez. Said statements were false when made and were made with intentional or reckless disregard for the truth or falsity of the statements. They had further had the effect of demeaning and/or degrading Officer Perez's reputation within the community.

(Rec. Doc. 1, at 15.) Further, the complaint alleges that the City is likewise liable because Norton made the statements while acting as a "policymaker" for NOPD. While Plaintiff's complaint alleges

34

the first, third, and fourth elements of defamation, it does not allege that Norton's statements were unprivileged and made to a third party. Thus, the complaint is deficient in this regard.

Even if Plaintiff did adequately state a cause of action for defamation, Defendants are entitled to summary judgment on this claim. Plaintiff has not introduced any evidence to support his allegations. Further, Plaintiff did not oppose Defendants' motion for summary judgment on this cause of action. Thus, Plaintiff's claim for defamation should be dismissed.

*5. IIED Claims*

Under Louisiana law, a claim for IIED requires a showing that "(1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress and knew that severe emotional distress would be substantially certain to result from the conduct." *Murungi v. Tex. Guaranteed,* 693 F. Supp. 2d 597, 607 (E.D. La. 2010), *aff'd,* 402 F. App'x. 849 (5th Cir. 2010) (citing *White v. Monsanto,* 585 So. 2d 1205, 1209 (La.1991)). The Louisiana Supreme Court described the "extreme and outrageous" requirement as such:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not

35

> extend to mere insults, indignities, threats,
> annoyances, petty oppressions, or other trivialities.
> Persons must necessarily be expected to be hardened to
> a certain amount of rough language, and to occasional
> acts that are definitely inconsiderate and unkind. Not
> every verbal encounter may be converted into a tort; on
> the contrary, some safety valve must be left through
> which irascible tempers may blow off relatively harmless
> steam.

*White*, 585 So. 2d at 1209 (internal quotation marks and citations omitted).

With respect to IIED, Plaintiff's complaint states:

> The conduct of the City and its policymakers Serpas and
> Norton, was extreme and not reasonably calculated
> towards the circumstances of the conduct alleged herein.
> Said conduct has caused severe distress to Officer
> Perez. Chief Serpas and Officer Norton-acting on behalf
> of the City-intended for that distress to be sustained
> by Officer Perez because he spoke out against the illegal
> policies of the NOPD.

(Rec. Doc. 1, at 16.) The complained-about "conduct" includes disciplining Plaintiff, denying him promotion, demeaning him to the NOPD and the public, and unnecessarily criticizing him. (Rec. Doc. 1, at 13.) Plaintiff's complaint fails to explain how this behavior could be considered "outrageous" and "beyond all possible bounds of decency." *Murungi*, 693 F. Supp. 2d at 608. Instead, this conduct amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See White*, 585 So. 2d at 1209.

36

To the extent that Plaintiff stated a cognizable claim for IIED, such claim is subject to summary judgment for the same reasons as Plaintiff's defamation claim. Plaintiff neither adduced evidence to support his claim, nor opposed Defendants' motion with respect to IIED. Thus, Plaintiff's IIED claim should be dismissed.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motions in Limine* **(Rec. Doc. 130; Rec. Doc. 145)** are **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' *Motion to Dismiss/Motion for Summary Judgment* **(Rec. Doc. 116)** is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' *Motion for Leave to File Reply* **(Rec. Doc. 154)** is **DENIED** as moot.

New Orleans, Louisiana, this 24th day of March, 2016

CARL J. BARBIER
UNITED STATES DISTRICT COURT